UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPEEDMARK TRANSPORTATION, INC.,               :

                Plaintiff,               :               11 Civ. 0722 (AJP)

        -against-               :               **OPINION AND ORDER**

RAY MUI, JOE PHAN, TONY LIU &               :
EVERGLORY LOGISTICS, INC.,
                          :

           Defendants.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

           Plaintiff Speedmark Transportation, Inc. brings this action against defendants Ray Mui, Joe Phan, Tony Liu and Everglory Logistics, Inc., alleging that Mui, Phan and Liu breached their February 19, 2002 employment agreements by: (1) "taking and/or using Confidential Information from Speedmark for the benefit of themselves personally and/or Everglory"; (2) "soliciting or otherwise enticing employees and an independent contractor to resign or otherwise cease working for Speedmark" and work for Everglory; and (3) "soliciting or otherwise enticing Speedmark customers to discontinue their contractual relationships with Speedmark." (Dkt. No. 17: Am. Compl. ¶¶ 48, 54, 60.)  Speedmark also asserts claims for (1) "Tortious Interference with Contracts" (Compl. ¶¶ 62-66); (2) "Breach of Covenant of Good Faith and Fair Dealing" (Compl. ¶¶ 67-70); (3) "Unfair Competition" (Compl. ¶¶ 71-77); and (4) "Breach of Fiduciary Duty" (Compl. ¶¶ 78-89).

Presently before the Court is defendants' motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 19: Defs. Notice of Motion.)[1/] Defendants principal argument is that under

---

[1/]    Where, as here, additional materials are submitted to the Court for consideration with a Rule 12(b)(6) motion to dismiss, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b); Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000); Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988). In support of their motion, defendants have submitted affidavits from Mui, Phan and Liu and the parties' Rule 26(a) Initial Disclosures. (Dkt. Nos. 22-24, 36.) These additional materials go beyond "the four corners of the complaint." See, e.g., Ramos Portocarrero v. Lindsay, No. 08-CV-3618, 2011 WL 9833 at *3 (E.D.N.Y. Jan. 3, 2011) (finding that defendants' arguments went beyond the complaint when it relied on facts in defendants' affidavit, attached exhibits, and Rule 56.1 Statement). The Court declines to consider these extraneous materials and will not convert defendants' motion to dismiss into one for summary judgment, since plaintiffs have not had the opportunity to take discovery from defendants. See, e.g., Key Items, Inc. v. Ultima Diamonds, Inc., 09 Civ. 3729, 2010 WL 3291582 at *5 (S.D.N.Y. Aug. 17, 2010) ("Because neither party has expressly moved for summary judgment and because the parties have not completed discovery, I decline to treat the . . . Defendants' motion [to dismiss] as one for summary judgment and shall not consider material outside the pleadings."); Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 677 n.1 (S.D.N.Y. 2009) ("[B]efore a Court grants summary judgment, the non-movant 'must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.' Thus, summary judgment may be premature before an adequate opportunity for discovery. In the instant proceedings[, plaintiff] has not had the opportunity to conduct discovery that could uncover evidence to support her allegations. The Court accordingly denies [defendant's] motion for summary judgment without prejudice . . . and treats [defendant's] motion only as a motion [to] dismiss." (quoting Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."))); FragranceNet.com, Inc. v. Les Parfums, Inc., 672 F. Supp. 2d 328, 330 (E.D.N.Y. 2009) ("[T]he Court declines to convert the motion to dismiss into a motion for summary judgment because . . . plaintiff is entitled to conduct discovery before making its presentation of evidence in response to any potential summary judgment motion."); Kissner v. Inter-Cont'l Hotels Corp., 97 Civ. 8400, 1998 WL 337067 at *3 n.2 (S.D.N.Y. June 25, 1998) ("[T]he Court declines to convert this motion to dismiss to a Rule 56 motion because significant factual discovery which would make this case ripe

(continued...)

3

New York's choice-of-law rules, the February 19, 2002 employment agreements are governed by Massachusetts substantive law which renders those agreements unenforceable.  (See Dkt. No. 20: Defs. Br. at 7-12; Dkt. No. 35: Defs. Reply Br. at 6-8.)  The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 11.)

For the reasons set forth below, defendants' motion is DENIED.

## FACTS

Speedmark is a "leading global provider of secure transportation services" with over "1,600 employees and operations throughout the United States, Europe, and Asia." (Dkt. No. 17: Am. Compl. ¶ 8.)  Speedmark is incorporated in New York, its headquarters are in California and it has offices in New York City, Boston, Chicago, Seattle, Los Angeles and Dallas.  (Am. Compl. ¶ 1.)

Defendants Mui, Phan and Liu each were longtime Speedmark employees.  (Am. Compl. ¶¶ 2-4, 9-12, 21-22.)  Mui, a Massachusetts resident, worked at Speedmark "for over fifteen years" and was the "Assistant General Manager of Speedmark's East Boston Office."  (Am. Compl. ¶¶ 2, 10, 17, 21.) Mui was "directly involved with Speedmark's customers, contractors and agents," and "had access to all of Speedmark's pricing information."  (Am. Compl. ¶ 17.)  Phan, also a Massachusetts resident,  worked for Speedmark for seventeen years and was the "General Manager of Speedmark's East Coast operations." (Am. Compl. ¶¶ 3, 11, 18.)  Like Mui, Phan was "directly involved with Speedmark's customers," contractors and agents, and "had access to all of

---

1/        (...continued)
          for a summary judgment motion has yet to be completed.").

H:\OPIN\SPEEDMARK

4

Speedmark's confidential pricing information."   (Am. Compl. ¶ 18.)  Although Phan was based at Speedmark's East Boston office, he "frequently worked in, and stayed in New York." (Am. Compl. ¶¶ 3, 18.)

Liu was the General Manager of Speedmark's Boston Office from March 1, 1988 until October 1, 1997.  (Am. Compl. ¶ 12.)  On October 1, 1997, Liu was promoted to "East Coast Regional Manager," oversaw the Boston and New York offices, and was based in Speedmark's Jamaica, New York office. (Am. Compl. ¶ 12.)  On May 1, 2002, Liu "was transferred to Speedmark's Shanghai joint venture office."  (Am. Compl. ¶ 12.)  As the "most senior employee in Speedmark's joint venture office in Shanghai," Liu was "privy to Speedmark's Confidential Information regarding its customers, contractors and agents in Shanghai and throughout Asia, Europe and the United States, as well as Speedmark's confidential pricing information."  (Am. Compl. ¶ 19.)

On February 19, 2002, Mui, Phan and Liu each signed employment agreements with Speedmark promising not to:  (1) "disclose or use any Confidential Information for the profit of any other party than Speedmark" during or after the termination of employment;[2] (2) "take advantage of any business opportunity arising from the Confidential Information gained as a result of his employment by Speedmark" during or after the termination of employment; (3) "directly or

---

[2]      Confidential Information includes "documents, computer generated information, or any other information or material related to the Company'[s] technical data, trade secrets or business strategies or operations, or know-how" that is not "publicly known" or "generally available"; "actual or prospective customer lists or . . . consultant lists"; and also "product plans; products; services; sales and marketing reports."  (Dkt. No. 32: Carrillo Aff. Exs. B-D: Employment Agreements § B(4)(a).)

5

indirectly solicit any Speedmark employee or service provider, including independent contractors, for twelve months after the termination of his employment"; or (4) "solicit, or attempt to solicit, directly or indirectly any Speedmark customer for twelve months after the termination of his employment." (Am. Compl. ¶¶ 13-15; <u>see</u> Employment Agreements § B(4)-(6).)  The employment agreements contain a choice-of-law clause stating that the agreements "shall be governed by and construed in accordance with the laws of the State of New York."  (Employment Agreements § B(11)(a).)

        In August 2010, while still employed at Speedmark, "Mui and Phan, with participation and encouragement of Liu," created Everglory Logistics, an international freight forwarder that would compete directly with Speedmark.  (Am. Compl. ¶¶ 24-27, 29.) Mui and Phan asked Jay Breda of Liteship International LLC, a Speedmark customer and agent, to help Everglory acquire the licenses necessary to begin operations.  (Am. Compl. ¶ 28.)  Mui and Phan told Breda "that they would withhold Speedmark's business from Liteship if Breda refused to assist them in setting up Everglory to compete against Speedmark."  (Am. Compl. ¶ 28.)  Breda acquiesced and Mui and Phan named him a director of Everglory.   (Am. Compl. ¶ 28.)  Everglory began doing business sometime before November 26, 2010.  (Am. Compl. ¶ 28.)

        On January 7, 2011, Liu resigned his position at Speedmark's Shanghai joint venture. (Am. Compl. ¶¶ 4, 22.) Shanghai General Manager Kevin Huang, Shanghai Ocean Freight Manager Ke-Lin Lai and Shanghai Customer Service Representatives Hai-Qin Wu and Wen-Jing Leng

resigned the same day.  (Am. Compl. ¶¶ 30-33.)[3/]  "Defendants solicited, induced, recruited, and/or encouraged [them] to resign."  (Am. Compl. ¶¶ 30-33.)

On January 10, 2011, Mui and Phan resigned their positions at Speedmark's East Boston office.  (Am. Compl. ¶¶ 2-3.)  Shortly thereafter, several other Speedmark East Boston employees, including independent contractor Fred Juden (January 10), customer service representative Carrie Stahl (January 19) and Air Export Supervisor Eric Ru (January 24), also resigned.  (Am. Compl. ¶¶ 35-37.)  "Defendants solicited, induced, recruited and/or encouraged [them] to resign from Speedmark and to commence providing the same services to Everglory."  (Am. Compl. ¶¶ 35-37.)

Following Mui and Phan's resignation from Speedmark, Phan and Mui solicited business from long-time Speedmark customers J.F. Moran Co. and F.A.F.  (Am. Compl. ¶¶ 39-40.)

On February 1, 2011, Speedmark commenced this suit seeking, inter alia, temporary and permanent injunctive relief barring defendants' continued solicitation of Speedmark employees and customers.  (See Dkt. No. 1: Compl.)

## ANALYSIS

The legal standards governing a motion to dismiss are well known and will not be set forth herein.  See, e.g., Maniolos v. United States, 741 F. Supp. 2d 555, 559-60 (S.D.N.Y. 2010) (Peck, M.J.) (& cases cited therein); Bison Capital Corp. v. ATP Oil & Gas Corp., 10 Civ. 0714,

---

[3/]  A few days before Liu's January 7, 2011 resignation, Shanghai Account Supervisor Andy Huang and Shanghai Customer Service Representatives Beng Li also resigned. (Am. Compl. ¶ 34.)  "Defendants solicited, induced, recruited and/or encouraged [them] to resign." (Am. Compl. ¶ 34.)

2010 WL 2697121 at *4-6 (S.D.N.Y. June 24, 2010) (Peck, M.J.), <u>report & rec. adopted</u>, 2010 WL 3733927 (S.D.N.Y. Sept. 16, 2010).

## I.      <u>DEFENDANTS' MOTION TO DISMISS IS DENIED</u>

Defendants broadly assert that each of Speedmark's claims must be dismissed because the amended complaint does not meet the <u>Iqbal</u>-<u>Twombly</u> "plausibility" standard required by Fed. R. Civ. P. 8(a)(2).  (Dkt. No. 20: Defs. Br. at 3-7; Dkt. No. 35: Defs. Reply Br. at 1-5.)   The Court disagrees.

Speedmark alleges that Mui, Phan and Liu entered into employment contracts whereby they agreed not to solicit Speedmark employees for a period of twelve months following the termination of their employment.  (<u>See</u> pages 4-5 above.)  Speedmark also alleges that nine Speedmark employees from the Shanghai and Boston offices resigned within days of Mui, Phan and Liu's resigning from Speedmark and launching a competing business.  (See pages 5-6 & n.3 above.)  Further, on information and belief, Speedmark alleges that Mui, Phan and Liu solicited these employees to leave Speedmark for Everglory.  (<u>See</u> pages 5-6 & n.3 above.)  Such facts support a plausible claim that Mui, Phan and Liu violated the terms of their employment contracts by soliciting for Everglory former Speedmark employees with whom they had worked.  The complaint also names two Speedmark customers that Mui and Phan solicited on behalf of Everglory.  (<u>See</u> page 6 above.)  Although the complaint neglects to state how Mui and Phan contacted those clients, or whether Everglory ultimately was successful in stealing business from Speedmark, those facts are not necessary to state a claim; the amended complaint's factual allegations are sufficient at this stage to support a plausible claim that Mui and Phan solicited business from Speedmark customers

8

in violation of their employment contracts.  See, e.g., AllGood Entm't, Inc. v. Dileo Entm't &

Touring, Inc., 726 F. Supp. 2d 307, 320 (S.D.N.Y. 2010) (Although allegation that defendant

"'disclos[ed] information prepared and/or provided by [plaintiff] to third-parties' . . . and breached

noncircumvention and noncompete terms . . . . is certainly not the most detailed or clear pleading[,]

. . . Plaintiffs have sufficiently alleged enough facts to state a breach of contract cause of action.");

Penrose Computer Marketgroup, Inc. v. Camin, 682 F. Supp. 2d 202, 212-13 (N.D.N.Y. 2010)

(Allegation that defendant utilized "highly confidential and trade secret information" to solicit

plaintiff's former customers "sufficiently states a cause of action for breach of contract."); Medtech

Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 811 (S.D.N.Y. 2008) ("The Amended Complaint

alleges that CDS entered into a consulting agreement with DenTek and Duane solicited Dental

Concepts' employees, suppliers, and consultants in violation of the non-compete and non-solicitation

claim.  Accordingly, . . . Medtech has sufficiently alleged a breach of contract claim against Duane

and CDS on the basis of the non-compete and non-solicitation clause in the Consulting

Agreement.").

            Defendants also allege that Massachusetts substantive law applies to the February 19,

2002 employment agreements and that, under Massachusetts law, the agreements are void.  (See

Defs. Br. at 7-8, 19-23; Defs. Reply Br. at 6-8.)  Such a choice-of-law determination is premature

on this motion to dismiss, since the record lacks facts necessary to conduct the context-specific

"center of gravity" or "grouping of contacts" analysis required by New York's choice-of-law

principles.[4/]  See, e.g., Arroyo v. Milton Academy, No. 5:10-cv-117, 2011 WL 65938 at *3 (D. Vt. Jan. 10, 2011) (Declining to conduct "choice-of-law analysis" because "it would be premature to resolve these complex questions before the completion of discovery."); Graboff v. The Collern Firm, No. 10-1710, 2010 WL 4456923 at *8 (E.D. Pa. Nov. 8, 2010) ("[C]onducting a . . . choice of law analysis is fact-intensive and context specific.  Due to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings."); Meserole v. Sony Corp. of Am., Inc., 08 Civ. 8987, 2009 WL 1403933 at *5 n.6 (S.D.N.Y. May 19, 2009) ("[A]t this early stage of the litigation [i.e., on motion to dismiss] . . . a detailed choice of law analysis would be premature.") (citing cases); Harper v. LG Electronics USA Inc., 595 F. Supp. 2d 486, 490-91 (D.N.J. 2009) ("The Court is unable to make the fact-intensive choice-of-law determination on the [motion to dismiss] record before it. . . . [C]hoice of law analysis must be undertaken on an issue-by-issue basis."); First Union Nat'l Bank v. Paribas, 135 F. Supp. 2d 443, 453 (S.D.N.Y. 2001) ("[I]t is premature to make a definitive choice of law ruling both because it is not yet clear that there is a conflict between New York and English law and because the litigation is at a preliminary stage." (fns. omitted)), aff'd, 48 F. App'x 801 (2d Cir. 2002).

---

[4/]   Assuming that the employment agreements' New York choice-of-law clause (see page 5 above) is not conclusive, this Court  must consider, inter alia, "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." Allstate Ins. Co. v. Stolarz, 81 N.Y.2d 219, 226-27, 597 N.Y.S.2d 904, 907-08 (1993) (Applying the "'center of gravity' or 'grouping of contacts' choice of law theory" in contract cases.); accord, e.g., Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 583 (2d Cir. 2006).

Finally, because Speedmark's remaining causes of action closely track the breach of contract claims and are not likely to expand the scope of discovery, it makes sense to allow all of Speedmark's claims to proceed at this stage and revisit them after discovery via a summary judgment motion.  See, e.g., William A. Gross Constr. Co. v. Am. Mfrs. Mutual Ins. Co., 600 F. Supp. 2d 587, 590 (S.D.N.Y. 2009) (Peck, M.J.) (citing cases); Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 268 (S.D.N.Y. 2008) (Peck, M.J.) (denying defendants' motion to dismiss plaintiff's fraud claim because it would not expand the scope of discovery where a surviving breach of contract claim substantially tracked the fraud claim); Brown v. DeFrank, 06 Civ. 2355, 2006 WL3313821 at *28 (S.D.N.Y. Nov. 15, 2006) (Peck, M.J.) (denying defendant's motion to dismiss claims where decision on the motion would not affect scope of discovery); New Eng. Cent. R.R. v. Springfield Terminal Ry. Co., 415 F. Supp. 2d 20, 27 n.5 (D. Mass. 2006) ("It is significant that denial of this partial motion to dismiss Plaintiff's state law claims will not increase the discovery burden because Plaintiff's federal claims rely on the same set of underlying facts."); Am. Rock Salt Co. v. Norfolk S. Corp., 180 F. Supp. 2d 420, 426 (W.D.N.Y. 2001) (denying defendants' motion to dismiss a second cause of action that was "based upon the same set of facts" as a surviving breach of contract claim where "permitting [the second] claim to go forward should not appreciably expand the scope of discovery needed in this case" and thus would not "prejudice . . . defendants").[5]

---

[5]   See also, e.g., Doe v. Goord, 04 Civ. 0570, 2004 WL 2829876 at *7 n. 13 (S.D.N.Y. Dec. 10, 2004) (Peck, M.J.); Metallia U.S.A. LLC v. Stulpinas, 98 Civ. 3497, 1998 WL 1039103 at *2 n. 3 (S.D.N.Y. Dec. 16, 1998) (Peck, M.J.) (citing cases); LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1095 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.).

11

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss or for summary

judgment (Dkt. No. 19) is DENIED.

SO ORDERED.

Dated:      New York, New York
            April 21, 2011

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies **by ECF** to:    Roberto C. Carrillo, Esq.
                         Justine H. Brousseau, Esq.

H:\OPIN\SPEEDMARK